Good morning. May it please the Court, Steve Bruschetto for the plaintiffs. This case concerns the question of whether, in the context of a situation where a state statute requires an employer to provide health insurance benefits to retirees, whether a city's decision to exclude retirees from the health insurance program constitutes either disparate impact or disparate treatment discrimination. In the district court, Judge Panner ruled that the city's decision to exclude retirees from its health insurance program did not constitute disparate impact discrimination, but Judge Panner never analyzed the data of the disparate impact. Under Moore v. Hughes Helicopter, Inc., Judge Panner was required to look at those eligible for the benefit in question to begin the measurement of disparate impact. Pardon me, counsel. The OTET policy. Yes. Covered people over 40. The OTET policy covered people over 40. That's correct. As long as they were active employees. As long as they were active employees. So the distinction is not whether they were over 40. The distinction is whether they were working for the company, working for the city of Medford. It's true that the distinction is based upon active versus pension status. Not age. Well, that's not correct. It is age. If you're 45 and you're working, you have health insurance. If you're 45 and you're retired, you don't have health insurance. Two people, the same person. Correct. One week when he's working has health insurance. He doesn't have health insurance the next week. Why is that discrimination based on age? It depends. There's two separate theories for addressing that. It's not disparate impact. You agree with that. No, I don't agree with that. I think it is very clearly disparate impact. But let me address your question for disparate treatment. Under the disparate treatment analysis, under Kentucky Retirement Systems, what you look at, that case is premised upon six background circumstances, one of which is that the differential in treatment, when based on pension status, is not age-related. In this one, we agree that it's not disparate treatment. No, we don't agree that it's not disparate treatment. It is facially discriminatory. It is on age. Correct. No, the person worked last week at age 45 and he had health insurance. He retires. The next week he doesn't have health insurance. He's still 45, and that's disparate impact as far as age. I didn't say that that was disparate impact. I said the decision to exclude retirees is disparate impact. The decision to exclude retirees is disparate treatment because it is facially discriminatory. It is based upon pension status, which is admitted. The only reason to treat retirees differently in terms of health insurance is because health insurance premiums are set based upon age. It is directly an age-related factor. Pensioners --" Well, the city didn't set the premiums. The city's paying them, but it didn't set them. We've had Supreme Court case law for 30 years that says the city can't justify differences in benefits by pointing to an insurance company and saying they made the difference in treatment. But there are Supreme Court cases that say, you know, it's not a proxy for age. I mean, right? I'm sorry. I didn't hear that, Justice. I said there are Supreme Court cases that say it's not a proxy for age, that it's a legitimate, reasonable factor. By case in paper, for instance. No, I don't. I believe that if you carefully read Hayes and Paper and Kentucky Retirement Systems, the underpinnings for those decisions are not present here. In Kentucky Retirement Systems, for example, the Court held that the pension status, the differential in treatment of people in the disability retirement plan as opposed to the regular retirement plan wasn't age-related. That is, whether somebody was eligible for a pension of a different age made no difference. In this case, the only reason for treating retirees differently under the health plan is their age. And that's because health insurance premiums are based upon age. Aren't the health insurance premiums on the 45-year-old a week before he retires the same as the week after he retires? Judge, I don't dispute that the city Can you answer that yes or no? I can answer that yes or no. The answer is a 45-year-old, their premiums would be set based on the age of the workforce. That answer yes? Yes. Yes. Okay. Answer the question. I'm sorry. Well, we know what your argument is, but when we ask a question, answer the question. I apologize, Judge. Now, Mr. Brichetto, you haven't said a word about the possible effect in this case of race judicata or collateral estoppel. Yes. And Judge Panner declined to apply collateral estoppel to the disparate impact claim, but applied it to the disparate treatment claim. Our argument is you can't go separate ways on the claim, on those claims. And that's because the class He should have applied it to both. He should have either applied it to both or applied it to neither. And because why? Because they're based on the same findings or the same sub-findings or the same factors? Both the facial discrimination claim and the disparate impact claim begin by comparing how the particular program treats people in the protected class. The protected class under State law is different than the protected class under Federal law. So there's no way you can apply collateral estoppel to the facial discrimination claim, but not apply it to the disparate impact claim or vice versa. The State court ruled there was a disparate impact. If you're going to apply collateral estoppel, it needs to apply that. If you're not, then you can't apply it to the facial discrimination claim. Because the facial discrimination claim, the evidence in the record is that the only people affected by the district's, by the city's decision to exclude retirees are people between 40, over 40, within the protected age group. 99 percent. Correct. Yes, Judge. The ‑‑ I believe that the disparate impact claim is controlled solely by the question of who you consider eligible for the benefit in question. I mean, it's dispositive. Well, if retirees under State law are eligible for the benefit in question, then to analyze the disparate impact of the Medford's decision, you look at both retirees and active employees. If retirees aren't a harsh report, aren't eligible for the benefit under State law or some other law, then you don't include them in the disparate impact analysis. But we have a finding in State court that they are entitled to the same health insurance benefits as active employees. With that finding, the decision to exclude them is disparate impact discrimination. The third issue is statute of limitations. And on the statute of limitations issue, Judge Panner ruled against Mr. Steinberg, concluding that Mr. Steinberg's claim was beyond the statute of limitations. He based his decision on a footnote in an earlier court of appeals decision, which set forth a hypothetical date for running of the statute of limitations depending upon certain facts. Those facts aren't in the record, and so one couldn't apply them to Mr. Steinberg's claim. And in addition, Plaintiff offered evidence into the record as to when Mr. Steinberg  What does it matter when he learned he had a claim or when he learned of the facts that might have given rise to the claim? What my understanding of the Ninth Circuit case law is what matters is when he learned that there was an employer adverse decision that harmed him. That's the criteria. He did not know there was an adverse employer decision that harmed him until September of 2005. Well, I mean, I don't know if I can agree with that. In other words, you're saying statute of limitations, just as a principle, doesn't start to run until the person affected realizes the legal consequences of whatever action was taken against them, right? No. That's what you're saying, that he learned he had a claim. No. You have to know that there is an adverse employer action. And he learned that much earlier. Wait a minute. Now, he learned that fact, if it was an adverse employment action, much earlier than he claims he learned that he had a claim, right? No. Well, he knew those facts. Knew what facts, Judge? The adverse employment action. There was no adverse employment action that he knew of until September of 2005. When he retired, he went on COBRA, continued the same health insurance for a period of 18 months. He was not told that he was not, that the employer had made a decision that he could not participate in a State program for continuing his health insurance benefits. So he did not learn of an employer decision until September of 2005. And how did he learn about it? He learned when one of the other plaintiffs asserted a claim, went in front of the city council, and disclosed that the other plaintiff learned about it. How did other plaintiffs learn? Maybe they read the pertinent documents. The plaintiff who triggered Mr. Steinberg to know was the former city attorney who knew of the decision from his own participation in the decision in 2001. Public acts? I mean, it was revealed to the public what those decisions were, or were they kept secret? Those decisions were kept secret. Really? There's no public disclosure of those, of when the city of Medford decides to buy or doesn't buy insurance? Oh, there was clearly public disclosure of the decision to buy insurance. There was no public disclosure of the underlying disagreement as to whether the city was or wasn't complying with a State law. But how is that a factual – what exactly did he learn that you argue didn't trigger the statute? I mean, I'll put this backwards. What didn't he know that he needed to know to trigger the statute of limitations? He knew he wasn't getting coverage. Eighteen months after his – he left, he knew that his coverage had ended. What he didn't know is that there was a State law and a city program that required the city to notify him he could continue his coverage. That's what he did not know. Well, that's exactly what – He knew of the injury. I'm sorry? He knew of the injury. He may not have known he had a legal claim based on an injury, but I don't understand how your argument tells me that he didn't know of his injury. He didn't get coverage. He knew that. He perhaps needed to investigate as to see whether he had a cause of action. But if the statute of limitations period starts running when you know of the actual injury, why didn't it start running when he knew he didn't have coverage? Well, the reason that it wouldn't start when he didn't – when he lost his coverage is that he did – he was unaware that he should have coverage. One would have to – That isn't the legal claim? I mean, that seems to me to be the piece that says you may have a legal cause of action. The injury was a lack of coverage. He was no more injured after he learned the city should have given him coverage than he was before. He didn't have coverage either way. No, what he learned was that the city had made a decision to not provide him coverage. He didn't know that. Well, no, necessarily he knew somebody made a decision to deny him coverage because he was denied coverage. He didn't have coverage. I mean, this is – I mean, that's almost the same question I was asking you. All he learned later on that, you know, he had a legal claim. He learned a legal basis of what happened and the underlying facts. One would have to know that the city had an obligation to provide coverage to know that one had been denied coverage. Oh, no, you don't have to know that. For instance, I mean, someone who brings an ADE claim on, you know, has to know that the city has an obligation not to violate the ADE in order to have a claim? I don't think so. When people retire normally, people know of the existence of COBRA. They know they can continue their coverage for 18 months. They don't know the employer makes any other kind of decision. Unless you know that the employer has some plan or program or obligation to continue your coverage on retirement, you wouldn't know that the employer made any employment related decision. And that obligation is a matter of Oregon statute. There is no question that ORS 243. The answer to that, yes. Yes. Why didn't he know the statute? Is he charged with knowledge of the statute? In all honesty, Judge, I don't believe in the context of this. The answer is no. I don't believe he is charged. Your city attorney knew the statute. I'm sorry? The city attorney knew the statute. He did. If he had walked into your office, you would have told him he had a cause of action, right? If the city attorney did, yes. And so would Mr. Steinberg. So it's a matter of doing due diligence as to the knowledge of the law. Well, we all put facts into the record that he did do due diligence. That's why I created an issue of fact. He checked with the human resources director. He checked with the police chief. He was told by the buyer. He was misled. Did they tell him that he didn't have a right? What they told him, they did not say those words. What they told him is that his. I mean, is this a case of fraudulent misconcealment or not? Concealment of some sort? It is a case of concealment, yes. So your case, your question on discovery is he couldn't discover because he was misled by the defendants. Correct. Okay. He was told he was under a trust, and as a result, he wasn't a part of any State program. He had no reason to disbelieve that. And were those facts brought up before Judge Panner? Yes. They were in an affidavit before the judge. Well, that's like a tolling argument, isn't it? A tolling argument was raised. Yes, it is. And what did Judge Panner say about whether or not statute should be tolled? He did not rule on the question. He did not. But nonetheless, on the ultimate underlying issue, he ruled there was not compliance with the statute of limitations by Mr. Stanker. Is that right? On the underlying question, yes, that's right. He ruled that the statute of limitations was not complied with. I note my time is up. I appreciate your questions, Judge. Thank you. Thank you. Robert Franz for the defendants, Your Honors. You're right on the right track. I really have nothing to offer. The only point that I would address would be the one about why you apply issue inclusion to just the intentional discrimination versus the impact. And the reason why you apply the findings of Judge Schiavone. The argument that the plaintiff had just made to you, Judge Schiavone rejected. Judge Panner rejected. The EOC rejected it when he made his administrative remedy. The findings is that the change. When you say the argument, he made exactly what argument you're referring to. The one that because of the statute provides coverage for both, that taking away the retiree coverage would violate the State Discrimination Act. Is what now? I beg your pardon? Is it disparate treatment or disparate impact? The disparate treatment case, Judge Schiavone found in our favor. He found that there was the reason for the change in insurance was cost, not age. So Judge Panner took that finding and said, okay, I'm going to apply that finding to the Federal. The reason the change was because of cost, not because of any intentional discrimination. Judge Schiavone rejected Mr. Bruschetto's argument that because the statute requires coverage, it's a disparate impact. What Judge Schiavone found, and here's what he said about why there was a disparate impact. He said, now remember, the Age Discrimination Act in Oregon is 18 and over. Federal is 40 and over. So Judge Schiavone said, because the employees affected by the policy are all over the age of 18, it cannot be disputed that the policy affects employees over the age of 18 at a significant higher rate than employees under the age of 18. So he says, all the employees of the city over 18 are impacted because it applies differently to the employees 17 and younger. This city has no employees 17 and under. I'm not sure what city has employees 17 and under. And so it's a complete comparison of different things. So Judge Panner basically said, well, we're not talking about employees 17 and under. We're talking about the age difference being at age 40. And what's interesting about it is had we hired somebody 17 or younger, he would have got the insurance, because every employee who works gets the insurance. So that's the only point I want to make as to why it doesn't apply to both at the same time, if there's any other questions. Roberts. What's happened to the State court case? Was it on appeal? Yes, but the State court case, we have four lawsuits. We had two, Bova and Doyle, Federal, Doyle and Bova State. The Bova case came up to the Ninth Circuit, and they ruled it wasn't right because Bova was a class action for current employees. The Ninth Circuit said it wasn't right because we don't know if these people are going to retire or not. The Dova Federal came to the Ninth Circuit, and in a footnote, in fact, in the Doyle Federal, the first time around, there was a footnote that noted that the two claims were barred by the statute of limitations because the insurance had to be provided 60 days after you retire. So the Ninth Circuit, in a footnote, mentioned those were barred by the statute. And the Ninth Circuit said there's no property interest to have this insurance. The issue was due process and age discrimination. So the Ninth Circuit said, no, because the statute is discretionary, there's no property interest. Well, Judge Panner initially granted summary judgment to us on age discrimination without discovery. He didn't see it. When we got together first, we just decided to file motions. The plaintiff wanted discovery on the age discrimination. So the Ninth Circuit said, yeah, let's give him discovery. So it came back down. Discovery was allowed on this age discrimination claim. Then Judge Panner ruled again, and now it's back in front of you now. On the Doyle State oral argument, it was held on January 11th. On the Bova State oral argument, it was held two days ago. So we have all the issues on all of them, whether or not there was actually a violation of the statute or not. And then this is the last of the Federal case. The oral argument, is that the State court of appeal? Yes. Same panel for both cases? No. Strangely enough, it wasn't. So I don't know. We just talked about that yesterday, Wednesday, because Mr. Bruschetto and I were talking. So too bad I couldn't get my choice of panelists. Any other? I think he'd say the same thing. Thank you very much. Thank you. The case just argued is submitted.
judges: Tashima, Clifton, Bea